IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BENNY RILEY, JR.**                                                                                      **PLAINTIFF**

**V.**                                         **NO. 3:21-cv-00087-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                               **DEFENDANT**

## ORDER

### I.  Introduction:

Plaintiff, Benny Riley, Jr., applied for disability benefits on January 31, 2019, alleging disability beginning on August 2, 2016. (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Riley's application on August 27, 2020. (Tr. at 21). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Riley has requested judicial review.

For the reasons stated below, the Court[1] affirms the ALJ's decision.

### II.  The Commissioner's Decision:

The ALJ found that Riley had not engaged in substantial gainful activity since the application date of January 31, 2019. (Tr. at 12). At Step Two, the ALJ found that Riley had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, lumbar spondylosis, schizoaffective disorder, personality disorder, and posttraumatic stress disorder. After finding at Step Three that Riley's impairments did not meet or equal a listed impairment (Tr. at

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (*Doc*. 4).

13), the ALJ determined that Riley had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions. (Tr. at 14). The ALJ found that Riley would be limited to occasional climbing of stairs/ramps, stooping, crouching, kneeling, and crawling. Riley could perform limited overhead reaching, but frequent handling and reaching that is not constant and repetitive. Any required interpersonal contact must be incidental and superficial for coworkers and supervisors, and Riley should not have contact with the public unrelated to the work performed. He could perform rote tasks with few variables and little judgment, and the supervision required would be simple, direct, and concrete. The ALJ also found that Riley would be able to perform work at the sedentary exertional level with these same limitations and restrictions.

At Step Four, the ALJ determined that Riley was unable to perform his past relevant work as a component assembler. (Tr. at 19). Relying upon Vocational Expert ("VE") testimony, the ALJ found, based on Riley's age, education, work experience, and RFC, that he could perform jobs that existed in significant numbers in the national economy, including jobs at the light exertional level, such as electrical accessory assembler and router, as well as jobs at the sedentary exertional level, such as addresser, circuit board assembler, and document preparer. (Tr. at 20). Therefore, the ALJ concluded that Riley was not disabled. (Tr. at 21).

**III. Discussion:**

    **A. Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Riley's Arguments on Appeal

Riley contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ: (1) did not properly assess a medical source opinion from Riley's treating physician; and (2) failed to resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Riley first argues that the ALJ erred in finding that a medical opinion from Riley's orthopedist, Kurt Piatkowski, D.O., was unpersuasive. In determining a claimant's RFC, an ALJ considers all of the relevant evidence in the case record, including medical opinions. 20 C.F.R. § 416.920(e). When evaluating claims filed on or after March 27, 2017,[2] an ALJ will not defer or

---

[2] The Social Security Administration revised its medical evidence rules in 2017, changing both the

3

give any specific evidentiary weight to a medical opinion, regardless of the source. 20 C.F.R. § 416.920c(a). Instead, the ALJ will evaluate the persuasiveness of each medical opinion based on a number of factors, including the supportability of the opinion, the consistency of the opinion with other evidence in the record, the source's relationship with the claimant, any specialization the source may have, and any other factors that tend to support or contradict the opinion. *Id*. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ will explain in the final written opinion how these factors were considered. *Id*. § 416.920c(b)(2). With regard to the supportability factor, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion, the more persuasive the opinion will be. *Id*. § 416.920c(c)(1). As for consistency, the more consistent a medical opinion is with evidence from other medical and nonmedical sources in the record, the more persuasive the opinion will be. *Id*. § 416.920c(c)(2).

Dr. Piatkowski opined that Riley's chronic lumbar spondylosis, lumbar radiculopathy, and bilateral leg weakness would severely limit his functional capacity. (Tr. at 787-88). On a checkbox form, Dr. Piatkowski indicated that Riley could lift and carry no more than 10 pounds frequently or occasionally. He would be able to stand, walk, and/or sit for less than two hours in an eight-hour workday. He would only be able to perform reaching, fingering, and handling occasionally. He would not be able to perform any postural activities. Dr. Piatkowski felt that Riley would need frequent rest periods and longer than normal breaks, with the opportunity to shift positions at will. He would need to avoid even moderate exposure to all environmental elements, including extreme

---

scope of what evidence constitutes a "medical opinion" and the way such evidence is considered when evaluating a claim for benefits. *Compare* 20 C.F.R. § 416.927 (defining and evaluating medical opinion evidence for claims filed before March 27, 2017), *with* 20 C.F.R. § 416.920c (considering medical opinions for claims filed on or after March 27, 2017), *and* 20 C.F.R. § 416.913 (defining categories of evidence effective as of March 27, 2017).

temperatures, high humidity, pulmonary irritants, and sunlight. His impairment, or the medications taken for it, would very frequently require redirection to remain on task. The orthopedist also opined that Riley would miss more than three days of work per month. The objective evidence Dr. Piatkowski cited in support of this opinion were Riley's decreased range of motion in the lumbar spine and his bilateral leg weakness from chronic lumbar spondylosis and radiculopathy.

The ALJ found that the objective imaging studies of record did not support this opinion, because they showed only mild degenerative disc disease and moderate spondylosis with no evidence of significant stenosis or foramina narrowing. (Tr. at 19, 754). Riley argues that an August 2019 lumbar MRI also noted minimal disc protrusion at L4-L5 that constitutes objective proof of his impairment that could account for his pain, citing *Beckley v. Apfel*, 152 F.3d 1056, 1060 (8th Cir. 1998) for support. This argument misses the mark. The ALJ did not dispute that Riley suffered from impairments that could cause pain. (Tr. at 18). Rather, he found that the objective imaging did not support Dr. Piatkowski's opinion about the severity of limitations and restrictions Riley's lumbar impairments caused. (Tr. at 19). This is precisely what the ALJ should consider in evaluating the supportability of a medical opinion.

Riley also argues that Dr. Piatkowski's opinion was supported by objective imaging of his cervical spine, which showed more significant degenerative changes, along with posterior osteophytes, disc protrusion, and mild spinal stenosis. (Tr. at 464, 756-57). But Dr. Piatkowski did not present this evidence as support for his opinion, or even acknowledge that Riley had any physical problems with his cervical spine, so such evidence could hardly undermine the ALJ's supportability finding. *See* 20 C.F.R. § 416.920c(c)(1) (supportability factor is based on relevance of "objective medical evidence and supporting explanations *presented by a medical source* [to] support his or her medical opinion") (emphasis added).

The ALJ also found that Dr. Piatkowski's opinion was inconsistent with the other evidence in the record as a whole. He cited Riley's conservative treatment regimen, which consisted of injections and medications without surgical intervention. Multiple notes show Riley saw good results from this treatment and that his pain appeared to be under control. (Tr. at 736 751, 791, 794, 834). Impairments that are controlled through treatment or medication cannot be considered disabling, *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009), and the "conservative care" Riley received from his orthopedist is inconsistent with the extreme limitations Dr. Piatkowski identified in his opinion (Tr. at 617). Dr. Piatkowski's own notes show that Riley described his lumbar pain as only "mild and sometimes severe." (Tr. at 774, 797). At a June 2019 exam, Dr. Piatkowski specifically noted that there was no strength deficit in Riley's legs (Tr. at 715), and motor weakness findings in Riley's upper extremities were of slight or mild severity (Tr. at 617-18, 848). These findings tend to contradict the extreme limitations indicated in Dr. Piatkowski's opinion.

Numerous clinical notes in the record do indicate that Riley consistently reported neck and back pain, often with associated trigger points and decreased range of motion. Riley specifically faults the ALJ for failing to consider how Dr. Piatkowski's opinion was consistent with a clinical note from another of Riley's treating orthopedists in May 2020, which stated that Riley was unable to bend forward, reach up, or twist without pain; had overall reduced physiological range of motion; experienced pain in his lower back with any attempts at getting out of his chair, reaching above his head, or picking something up at floor level; experienced pain when he attempted to get on the exam bed; and "appear[ed] to exhibit reduced function with simple activities of daily functioning." (Tr. at 858). The ALJ discussed this note in his opinion but found that the orthopedic examination findings in the record were inconsistent with clinical notes from Riley's primary care physician during the same time period showing Riley had normal range of motion in his spine with

6

soreness, could bend to 80 degrees, had a normal gait, and could tiptoe, heel walk, and squat. (Tr. at 759). The ALJ determined these clinical notes were more consistent with the imaging results and mild objective findings, while the orthopedist notes appeared to rely mostly on Riley's subjective complaints of pain. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (concluding that a medical opinion was based on claimant's subjective complaints where it reflected the subjective complaints but was otherwise unsupported by medical evidence). The ALJ was entitled to conclude that Dr. Piatkowski's opinion was less persuasive on this basis.

Although the Court acknowledges there is evidence in the record which could support Dr. Piatkowski's opinion and even an ultimate finding of disability, it is not the task of this Court to re-weigh the evidence before the ALJ. Rather, the Court "must affirm if one of two feasible inconsistent positions drawn from the evidence supports the Commissioner's findings." *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). The ALJ properly evaluated the medical opinion according to the relevant standards, and his conclusion is reasonable and supported by substantial evidence. The Court thus finds no error in the ALJ's decision to discount the persuasiveness of Dr. Piatkowski's medical opinion.

Riley's second argument on appeal concerns an apparent conflict between the VE's testimony at the hearing and information contained in the DOT. Before an ALJ can rely on VE evidence to support a finding that a claimant is not disabled, the ALJ must ask about, and obtain an explanation for, any possible conflict between the VE's testimony and information provided in the DOT. *See* Soc. Sec. Ruling ("SSR") 00–4p, 2000 WL 1898704, at *4; *Renfrow v. Colvin*, 496 F.3d 918, 920–21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014). When an apparent conflict exists, the ALJ must "resolve the conflict by determining if the explanation given

by the expert provides a basis for relying on the VE testimony rather than on the DOT information." *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (cleaned up).

In this case, the ALJ and VE both acknowledged the apparent conflict that existed between Riley's RFC, which limited his ability to perform overhead reaching, and the VE's hearing testimony, which asserted that Riley could perform five jobs listed in the DOT as requiring frequent reaching.[3] After the ALJ specifically asked the VE to "discuss the DOT and the problems with directional reaching," the VE explained that the jobs she identified do not require any overhead reaching because the job tasks are performed in front of the worker. (Tr. at 57-58). She said that her testimony was based on her education and knowledge of how the jobs she identified were performed. (Tr. at 57). This testimony provided a reasonable explanation for the apparent conflict and thus lends the requisite support to the ALJ's Step Five determination. *See Stockwell v. Comm'r*, No. 3:20-cv-00393, 2021 WL 5758876, at *5 (E.D. Ark. Dec. 3, 2021) (explaining that a VE's reference to unexplained "experience" is insufficient but that no error exists where VE "talks just a bit more" about experience with the jobs identified).

In his written opinion, the ALJ acknowledged that "the vocational expert's testimony is inconsistent with the information contained in the [DOT]," and he concluded that the VE's testimony provided a reasonable explanation for the discrepancy. (Tr. at 20). The Court agrees and finds no error occurred at Step Five.

## IV. Conclusion:

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The

---

[3] The DOT does not specify the direction of reaching that is required to perform these jobs. *See Moore*, 769 F.3d at 989.

finding that Riley was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 10th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE